James Michael GORDON as trustee for
the next of kin of Chad
Gordon, Appellant,

v.

Ervin HOFFMAN et al., Respondents,

Michael Paul Kluthe, Respondent.

No. 50861.

Supreme Court of Minnesota.

Jan. 30, 1981.

Rehearing Denied Feb. 18, 1981.

Lang, Pauly & Gregerson, Minneapolis, for appellant.

Jardine, Logan & O'Brien, St. Paul, for Hoffman et al.

Ellingson & Grimes, Bloomington, for Kluthe.

SCOTT, Justice.

James Michael Gordon, as trustee for the next of kin of Chad Gordon, appeals from the order of the Ramsey County District Court denying his post-trial motions for a new trial or for judgment notwithstanding the verdict. We affirm.

The decedent, the 5-year-old son of James Michael Gordon, died of a gunshot wound resulting from the discharge of a Winchester Model Pump Action .22 caliber rifle owned by Ervin Hoffman. The death occurred when Chad Gordon and his 7-year-old sister, Nicole, were at the home of respondent Hoffman. The Hoffmans' 15-year-old daughter, Laurie, had agreed to babysit for the Gordon children. Also present at the Hoffmans' home on that day were 10-year-old Michael Kluthe, 13-year-old Glenn Kluthe, and 10-year-old Steven Fenske.

At some point during the course of the day, Laurie Hoffman asked the other children if they would be interested in seeing a rifle that was located in her parents' bed-

room closet. Laurie took the gun from the closet and pointed it at the several children, stating, "Get out or I will shoot you." She told the children that the gun was not loaded and that they could look at it if they wished. At that time, Michael Kluthe and Chad were in Laurie's parents' bedroom looking at pictures. Steven Fenske was not in the room. Michael Kluthe then picked up the gun from the bed and was looking at it, when Chad allegedly seized it and indicated that he too wanted to hold the gun. Michael refused to give it to him and, when Chad continued to pull on it, the gun discharged. Michael later stated that he then put the gun on the bed and said nothing further. He also indicated that he did not check to see if the safety was on, and was unaware of the location or purpose of a safety.

Steven Fenske indicated that after hearing the shot he walked into the Hoffman bedroom and found Chad curled up on the floor with his head down and blood on his body. Michael Kluthe was standing next to him. Steven apparently then went to another room to inform Laurie that Chad had been shot.

The wrongful death action commenced by the father of the decedent was tried in the Ramsey County District Court to a jury. The jury returned its special verdict finding that the decedent, Chad Gordon, was not negligent; that defendant Ervin Hoffman was negligent, but that his negligence was not a direct cause of the accident; that defendant Laurie Hoffman was not negligent; and that defendant Michael Kluthe was not negligent. The jury did not respond to the comparative negligence question of the special verdict, but nevertheless found that the next of kin of the decedent had suffered damages in the amount of $30,473.97. Thereafter, by order dated November 2, 1979, the district court directed the entry of judgment in favor of the defendants. Plaintiff then moved the district court alternatively for judgment notwithstanding the verdict or for a new trial. These motions were denied, and this appeal followed.

The issue before us is whether the district court abused its discretion in denying the plaintiff's alternative post-trial motions.

Appellant first asserts that defendant Ervin Hoffman should have been found negligent as a matter of law. He argues that numerous cases have imposed liability on an adult for making a gun accessible to an inexperienced child whose misuse of it results in injuries to a third person, citing *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957); *Mattson v. Minnesota and N. W. RR.*, 95 Minn. 477, 104 N.W. 443 (1905)—the latter dealing with explosives and firearms. Appellant asserts that Hoffman's action in maintaining a loaded gun in a bedroom closet, accessible to his daughter and any children whom she might babysit, without providing his daughter with safety instructions or otherwise making the gun inaccessible, is clearly negligence as a matter of law.

Appellant also argues that the court erred by failing to instruct the jury in accordance with *Sutor v. Rogotzke*, 292 Minn. 224, 194 N.W.2d 283 (1972), relating to an instruction of res ipsa loquitur. Notably, appellant admits that this instruction was not requested, but suggests that it was nevertheless error on behalf of the court to fail to so instruct the jury.

In response, respondents suggest that there was no testimony at the trial upon which the court could find as a matter of law that any of the respondents were negligent or that their negligence was a direct cause of the accident. Additionally, they suggest that, based upon the testimony presented, the court was correct in instructing the jury that the mere fact that an accident has occurred does not mean that anyone has been negligent—even though the death resulted from a gunshot. They argue that the *Sutor* case was inapplicable and that the trial court's general instructions were sufficient.

Although appellant attempts to argue that errors of law requiring resolution on appeal were committed during the trial, the principal question presented relates to the sufficiency of the evidence to

support the jury verdict. Implied in appellant's line of reasoning is his position that, as a death has occurred, someone must have been negligent in creating the events which led to that death. The standard of review in this area is that, on appeal, the evidence must be reviewed in a light most favorable to the verdict. *State v. Goblirsch*, 309 Minn. 401, 246 N.W.2d 12 (1976). The verdict will not be disturbed if the evidence reasonably tends to support it. *Kuehl v. National Tea Co.*, 310 Minn. 48, 245 N.W.2d 235 (1976).

In the instant case, the jury was fully apprised of the circumstances giving rise to this tragic accident. There was evidence to the effect that respondent Hoffman had placed a loaded gun in his bedroom closet behind certain boxes and other articles. There was also evidence that his 15-year-old daughter removed the firearm and exhibited it and made it accessible for examination by the minor children, including the decedent. There was further evidence that the daughter left the gun unattended, assuming that it was not loaded. Finally, there was evidence that the two minor children struggled with the gun and that its discharge caused the death of Chad Gordon.

Nevertheless, the jury verdict appears to indicate its view that while Hoffman was negligent in leaving the loaded gun in a place accessible to children, that negligence was not a direct cause of the accident. While this court has not been provided with a transcript, that finding does not appear to be unwarranted under the circumstances made evident by the responses to interrogatories filed by each of the several defendants. The argument that someone must be found causally negligent in a case like this has been rejected by this court in the past.

One further question requires examination. In connection with this appeal, appellant suggests that the trial court, even in the absence of a request, erred in failing to provide the jury with an instruction relating to res ipsa loquitur. Despite the rather broad language of Rule 51, Minn.R. Civ.P., this court has stated that there is some obligation on the part of experienced trial lawyers to assist the court in submitting issues which they believe are involved in the case. *Knutson v. Arrigoni Bros. Co.*, 275 Minn. 408, 147 N.W.2d 561 (1966). Consistent with that statement, the court should instruct the jury on all issues, but a nondirection or failure to cover some particular feature is not reversible error where no special request for an instruction was made. *See, e. g., Olson v. Aubolee*, 92 Minn. 312, 99 N.W. 1128 (1904).

In *Sutor v. Rogotzke, supra*, this court held that it was error for the trial court to refuse a requested instruction relating to res ipsa loquitur where a rifle, under the exclusive control of the defendant, accidentally discharged and killed a hunter whose presence within the range of fire was known to the defendant. The court there analyzed the three essential elements of the doctrine and concluded that their presence creates a permissible inference of negligence. However, in the instant case the jury specifically found that the defendant was negligent but that such negligence was not a direct cause of the accident. It is the appellant's position that there could be no other explanation for the accident and that the jury should have been made aware of the scope of this doctrine. It is assumed, based upon the comments of the parties in their informal briefs, as well as the decision of the district court, that general instructions were given which would adequately apprise the jury of the various standards, particularly where a young child is involved. To assume, as the appellant would ask, that the instructions were inadequate, without a more detailed explanation to support that conclusion, would be incorrect.

All parties and this court are acutely aware of the tragic nature of this accident; yet that alone should not provide a basis for recovery in the absence of more detailed evidence tending to establish that the conduct of respondent proximately caused the injuries and death of the decedent. We therefore hold that the trial court's actions were correct.

Affirmed.

SIMONETT, J., took no part in the consideration or decision of this case.

OTIS, Justice (dissenting).

The jury in reviewing this tragic accident quite properly found that defendant Erwin Hoffman was negligent in leaving a fully-loaded gun in an unlocked closet located where defendant knew, or should have known, that small children might be playing.

Clearly, in my opinion, where the defendant has been found negligent under such circumstances, his negligence had to be a direct cause of the decedent's death. What may have confused the jury is the fact that it was defendant's 15-year-old daughter who actually took the gun out of the closet and left it where the younger children had access to it. But this is precisely the chain of causation which could be expected to flow from a father's leaving a gun where a teen-age daughter, acting as a babysitter, would be tempted to pull it out for the entertainment of small children, or for playfully threatening them with it, unaware of the fact it was loaded.

It is hard to imagine a more volatile or potentially disastrous situation than that created by this defendant.

If, as seems possible, the jury was of the view that the babysitter's role was a break in the chain of causation, in my opinion the jury's understanding of that concept was faulty as a matter of law. By leaving a gun where it could readily be discovered by a 15-year-old member of the household who had no reason to believe it was loaded, the owner could have anticipated the very tragedy which here occurred.

I would hold defendant's negligence to be a direct cause of Chad's death, or at the very least grant the trustee a new trial.